## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| **KELVIN MERRITT,** | ) | |
| **No. B-78207,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | **Case No. 14-cv-00494-MJR** |
| | ) | |
| **MAJOR ZEIGLER,** | ) | |
| **LT. HORTON,** | ) | |
| **C/O LINDENBERG,** | ) | |
| **AMY LANG,** | ) | |
| **REVA ENGELADE,** | ) | |
| **REBECCA STEFANI,** | ) | |
| **DR. NWABASI,** | ) | |
| **LT. KROKE,** | ) | |
| **C/O HARRIS,** | ) | |
| **C/O FLEMMING,** | ) | |
| **C/O SULSER,** | ) | |
| **C/O GOETZ,** | ) | |
| **C/O PHELPS,** | ) | |
| **C/O WINGARTER,** | ) | |
| **C/O NEWCOMBE,** | ) | |
| **C/O McCLURE, and** | ) | |
| **LT. HOLT,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## MEMORANDUM AND ORDER

**REAGAN, District Judge:**

Plaintiff Kelvin Merritt, an inmate in Menard Correctional Center, brings this action for deprivations of his constitutional rights pursuant to 42 U.S.C. § 1983, based on events surrounding his ongoing hunger strike.   As of April 18, 2014, when the complaint was signed, Plaintiff was in a cell without water, and also without clothing or hygiene products.   Plaintiff asserts that his life is in imminent danger.  He prays for a court-ordered State Police investigation into his situation, issuance an injunctive relief, and monetary damages.

The complaint is construed as including a motion for a temporary restraining order, which requires immediate review. The Court will simultaneously perform a preliminary review of the complaint pursuant to 28 U.S.C. § 1915A which provides:

> (a) **Screening.**– The court shall review, before docketing, if feasible or, in any event, as soon as practicable after docketing, a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity.
>
> (b) **Grounds for Dismissal.**– On review, the court shall identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint–
>> (1) is frivolous, malicious, or fails to state a claim on which relief may be granted; or
>> (2) seeks monetary relief from a defendant who is immune from such relief.

An action or claim is frivolous if "it lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). Frivolousness is an objective standard that refers to a claim that "no reasonable person could suppose to have any merit." *Lee v. Clinton,* 209 F.3d 1025, 1026-27 (7th Cir. 2000). An action fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The claim of entitlement to relief must cross "the line between possibility and plausibility. *Id*. at 557. At this juncture, the factual allegations of the *pro se* complaint are to be liberally construed. *See Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 821 (7th Cir. 2009).

<u>**The Complaint**</u>

According to the complaint, Plaintiff Merritt and his cellmate began a hunger strike on April 9, 2014. The two men refused to consume food *and* water. The reason for, or aim of the strike is not revealed in the complaint.

During the evening on April 12, Plaintiff's cellmate passed out. After taking Plaintiff's vital signs, Med. Tech. Rebecca Stefani and Nurse Reva Engelade declared Plaintiff to be "fine,"

which he contends was not the case.    In any event, the two inmates reaffirmed their hunger strike the next morning, on April 13.  The inmate's vital signs, urine and blood were all checked on April 13.    Plaintiff's blood pressure was hypertensive at 160/90.    *See* www. heart.org/HEARTORG/Conditions/HighBloodPressure/AboutHighBloodPressure/Understanding -Blood-Pressure-Readings_UCM_301764_Article.jsp (last accessed April 30, 2014).  According to Plaintiff, his protein and T4 (thyroxine) levels were also elevated.   Rather than being kept in the Health Care Unit, Plaintiff and his cellmate were sent back to their cell—the decision was apparently made by officials who are not named defendants.

On April 14, Plaintiff awoke feeling weak.  Plaintiff and his cellmate were taken back to the Health Care Unit and their vital signs, blood and urine were checked again—all remained elevated.  Plaintiff's cellmate passed out and was kept in the infirmary.  Plaintiff, however, was returned to his cell, purportedly because there was no room for him in the infirmary.  While in the Health Care Unit, Plaintiff told a doctor (who is not a named defendant) that he needed to see the warden because his life was in danger and he was in pain.  The doctor replied that the warden was never going to see Plaintiff.  Despite his condition, Plaintiff again reiterated he was on a hunger strike.

Either April 14 or the next day (the complaint is not clear), C/O Goetz and Internal Affairs C/O Phelps removed Plaintiff from his cell and interviewed him about an incident that had occurred a few months earlier.  When C/O Phelps returned Plaintiff to his cell there was a food tray in the cell.  Plaintiff asked that it be removed, but Phelps refused, instead telling Plaintiff to just throw it away.  Plaintiff contends Phelps was trying to "trick" him—apparently trying to entice Plaintiff to eat.   C/O Flemming then threw the food tray on the floor.

After Flemming and Phelps left the cell, Plaintiff attempted to drink some water, but the water supply had been turned off.  Having been told that he could die if he did not drink water, Plaintiff apparently abandoned that aspect of his hunger strike.  Plaintiff describes feeling lightheaded and passing out.  He awoke with a knot on his head.  Plaintiff told Med. Tech. Amy Lang what had happened and he asked for help, but Lang ignored him.

Plaintiff passed out again shortly after Lang refused to treat him.  When he awoke, people were kicking Plaintiff, twisting and pulling his limbs and dragging him.  Plaintiff was taken to the shower, where a bucket of water was poured in his mouth.  Plaintiff feared he was going to be killed.  Plaintiff identifies those involved in the assault as:  Amy Lang; C/O Lindenberg; C/O Goetz; C/O Flemming; C/O Sulser; Lt. Horton; and C/O Henry, who is not named defendant).[1]

Dr. Nwabasi arrived at the shower area and directed that Plaintiff be taken to the Health Care Unit because he needed an I.V.   However, Lt. Holt and Major Zeigler asked repeatedly if Plaintiff could just be placed in a cell in that area.  Dr. Nwabasi relented and Plaintiff was not taken to the Health Care Unit.

C/O Goetz and C/O Susler then threw Plaintiff into a wheelchair, wheeled him down some steps, assaulting him along the way, until they dumped Plaintiff onto the floor of a cell. After the guards left, nearby inmates told Plaintiff to check the water in his cell because it had been turned off on the previous occupant.  There was no water in the cell.   Plaintiff was left naked and thirsty.

Plaintiff was next dragged from his cell to see Med. Tech. Rebecca Stefani and Nurse Reva Engelade.  Med. Tech. Stefani then threated Plaintiff and told him he had to eat and drink.

---

[1] There is a vague reference to Dr. Nwabasi entering the room, saying that Plaintiff was making his eyes roll, and Dr. Nwabasi then rubbing his knuckles up and down Plaintiff's chest.  It is then alleged that Dr. Nwabasi was on his way to the scene.  It is not sufficiently clear that Dr. Nwabasi was in the group assaulting Plaintiff, or even present during the assault.  Any such intended claim should be considered dismissed without prejudice.

Lt. Kroke choked Plaintiff, telling him to eat.  When Plaintiff did not relent, he was dragged back to his cell without medical treatment.

For the next three days, April 15-17, Plaintiff continued to assert that he was on a hunger strike, but he simultaneously asked for medical treatment and that his water be turned on. Plaintiff identifies the following individuals as denying him treatment and/or water:  C/O Lindenberg; Lt. Holt; Amy Lang; Nurse Reva Engelade, as well as C/O Baumer and Psychologist Dana Delani, who are not named as defendants.   It appears that Plaintiff remains in this cell—the injuries from his assaults and the effects of his hunger strike untreated, without water, clothes and hygiene products, and possibly without a toilet.

Based on the allegations in the complaint, the Court finds it convenient to divide the *pro se* action into eight counts, generally based on the chronology of events.[2]   The parties and the Court will use these designations in all future pleadings and orders, unless otherwise directed by a judicial officer of this Court.  The designation of these counts does not constitute an opinion as to their merit.

>
> **Count 1:   C/O Phelps and C/O Flemming attempted to get Plaintiff to eat, in violation of the Eighth Amendment;**
>
> **Count 2:   C/O Phelps and C/O Flemming placed Plaintiff in a cell with no water, in   violation of the Eighth Amendment;**
>
> **Count 3:   Med. Tech. Amy Lang refused to get Plaintiff water of medical help after Plaintiff passed out and hit his head, in violation of the Eighth Amendment;**
>
> **Count 4:   Med. Tech. Amy Lang, C/O Lindenberg, C/O Goetz, C/O Flemming, C/O Sulser and Lt. Horton assaulted Plaintiff, in violation of the Eighth Amendment;**

---

[2] Allegations regarding the refusal to treat Plaintiff's cellmate are not discussed or presented as claims because Plaintiff lacks standing to present such claims.

**Count 5:**   Dr. Nwabasi, Lt. Holt and Major Zeigler left Plaintiff on the gallery when he needed to be taken to the Health Care Unit for an I.V., in violation of the Eighth Amendment;

**Count 6:**   C/O Goetz and C/O Susler assaulted Plaintiff and left him in a cell without water, in violation of the Eighth Amendment;

**Count 7:**   Med. Tech. Stefani, Nurse Engelade and Lt. Kroke were all involved in an effort to force Plaintiff to eat and drink, which included a physical assault by Kroke, all in violation of the Eighth Amendment; and

**Count 8:**   Between April 15-17, 2014, C/O Lindenberg, Lt. Holt, Med. Tech. Amy Lang and Nurse Reva Engelade denied Plaintiff medical treatment and water, in violation of the Eighth Amendment.

The Court has not recognized any constitutional claim stemming from the allegations that Nurse Stefani and Nurse Engelade declared that Plaintiff was "fine" on April 12, when he was not. Plaintiff offers no more than a vague assertion that does not satisfy the minimum pleading standard. Nor have any claims been recognized relative to allegations about treatment and the decision not to keep Plaintiff in the Health Care Unit on April 13 and 14, because no named defendants were involved in these decisions. Plaintiff's present condition—being without clothes, hygiene products, and possibly a toilet, are not attributed to a particular defendant, so no claim has been recognized relative to those issues. All of these possible claims should be considered dismissed without prejudice.

## Discussion

Although only notice pleading is required under Federal Rule of Civil Procedure 8(a) and *Bell Atlantic Corp. v. Twombly*, an understanding of the relevant constitutional principles is helpful.

The Eighth Amendment to the United States Constitution protects prisoners from being subjected to cruel and unusual punishment. *See also Berry v. Peterman*, 604 F.3d 435, 439 (7th

Cir. 2010).  The intentional use of excessive force by prison guards against an inmate without penological justification constitutes cruel and unusual punishment.  *See Wilkins v. Gaddy*, 559 U.S. 34 (2010); *DeWalt v. Carter*, 224 F.3d 607, 619 (7th Cir. 2000).

Prison officials can also violate the Eighth Amendment's proscription against cruel and unusual punishment when their conduct demonstrates "deliberate indifference to serious medical needs of prisoners." *Estelle v. Gamble*, 429 U.S. 97, 104 (1976).  A medical condition need not be life-threatening to be serious; rather, it can be a condition that would result in further significant injury or unnecessary and wanton infliction of pain if not treated.  *Gayton v. McCoy*, 593 F.3d 610, 620 (7th Cir. 2010).

A claim of deliberate indifference to a serious medical need contains both an objective and a subjective component. *Greeno v. Daley*, 414 F.3d 645, 653 (7th Cir. 2005).  To satisfy the objective component, a prisoner must demonstrate that his medical condition is "objectively, sufficiently serious." *Greeno*, 414 F.3d at 653, citing *Farmer v. Brennan*, 511 U.S. 825, 834 (1994) (internal quotations omitted).  A serious medical condition is one "that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would perceive the need for a doctor's attention." *Edwards v. Snyder*, 478 F.3d 827, 830–31 (7th Cir. 2007).  To satisfy the subjective component, a prisoner must demonstrate that the prison official "knew of a substantial risk of harm to the inmate and disregarded the risk." *Greeno*, 414 F.3d at 653.  "Deliberate indifference cannot rest on negligent actions or inactions, but must instead rest on reckless indifference to the plight of an inmate." *Cavalieri v. Shepard*, 321 F.3d 616, 626 (7th Cir. 2003).

At this early stage in the proceedings, the Court will assume that the four or more days Plaintiff did not eat or drink affected him a way that constituted a serious medical need.  *See*

*Freeman v. Berge*, 441 F.3d 543, 546-47 (7th Cir. 2006) (recognizing that more than a few days on a hunger strike can seriously risk one's health and even death); *Owens v. Hinsley*, 635 F.3d 950, 955 (7th Cir. 2011) (same).

> Prison administrators have a right and a duty to step in and force an inmate to take nourishment if a hunger strike has progressed to the point where continuation risks serious injury or death. *Freeman,* 441 F.3d at 546–47. But if weight loss and temporary discomfort are the only consequences of refusing to eat, then the inmate's choice to go on a hunger strike raises no Eighth Amendment concern. *See id.* at 547; *Rodriguez v. Briley,* 403 F.3d 952, 953 (7th Cir. 2005).

*Owens*, 635 F.3d at 955.   In other words, an inmate cannot "be permitted to engineer an Eighth Amendment violation." *Rodriguez v. Briley*, 403 F.3d 952, 953 (7th Cir. 2005) (citing *Pearson v. Ramos,* 237 F.3d 881, 886 (7th Cir. 2001)).

## Stray Defendants

Section 1983 creates a cause of action based on personal liability and predicated upon fault; thus, "to be liable under [Section] 1983, an individual defendant must have caused or participated in a constitutional deprivation." *Pepper v. Village of Oak Park*, 430 F.3d 809, 810 (7th Cir. 2005) (citations omitted).   *See also Herzog v. Village of Winnetka*, 309 F.3d 1041, 1044 (7th Cir. 2002) (causation is an element of a Section 1983 claim).   Merely naming a defendant in the caption is insufficient to state a claim. *See Collins v. Kibort*, 143 F.3d 331, 334 (7th Cir. 1998).

C/O Harris, C/O Wingarter, C/O Newcombe and C/O McClure are named as defendants, but there are not allegations regarding them in the narrative of the complaint.   Consequently, they will be dismissed without prejudice.

## Counts 1 and 7

Count 1 fails to state a constitutional claim and will be dismissed with prejudice.   The placement of a food tray in Plaintiff's cell, C/O Phelps' refusal to remove the tray, and C/O

Flemming throwing the tray to the floor do not violate the Constitution.  Insofar as the hunger strike may have been an act of speech protected under the First Amendment, Plaintiff remained free not to eat the food on the tray.   The defendants did not force Plaintiff to eat.   The defendants' acts amounted to nothing more than a "trick" or "game"—as Plaintiff himself characterized the acts.

Count 7 cannot be brushed aside at this juncture.  Defendants Stefani, Engelaade and Kroke allegedly went beyond mere persuasion and used physical force to attempt to get Plaintiff to eat.  Why Plaintiff was on his hunger strike, and the extent of the physical impact are relevant to analyzing Plaintiff's rights, Defendants' duties, and whether there can be any Eighth Amendment liability. *See Rodriguez*, 403 F.3d at 953. The complaint does not provide sufficient information.  Therefore, Count 7 shall proceed.

## Counts 2-6 and 8

Counts 2-6 and 8 state colorable Eighth Amendment claims and must proceed.

## Temporary Restraining Order

A temporary restraining order ("TRO") is an order issued without notice to the party to be enjoined that may last no more than 14 days. FED. R. CIV. P. 65(b)(2).  A TRO may issue without notice *only* if:

> (A)  specific facts in an affidavit or a verified complaint clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition; and (B) the movant's attorney certifies in writing any efforts made to give notice and the reasons why it should not be required.

FED.R.CIV.P. 65(b)(1).   Such injunctive relief is also warranted "to prevent a substantial risk of serious injury from ripening into actual harm."  *Farmer v. Brennan*, 511 U.S. 825, 845 (1994).

Plaintiff's prolonged hunger strike and its affects to date, alone, as well as his being housed in a cell without water and possibly without a toilet, and being left naked, suggest a substantial risk of harm, if not a present risk. Even if Plaintiff is still of a mind to refuse treatment relative to his hunger strike, he may be seeking medical treatment of the injuries he sustained by the alleged assaults—injuries that included a swollen testicle and his spitting up blood. However, because Plaintiff's situation and his aim are not at all clear, additional information is needed, so the Court will enlist a magistrate judge to further assess the situation.

The warden of Menard Correctional Center, Kim Butler, shall be added as a defendant to this action for the sole purpose of addressing the request for injunctive relief. *Gonzalez v. Feinerman*, 663 F.3d 311, 315 (7th Cir. 2011) (the warden, in his/her official capacity, is responsible for ensuring the injunctive relief is carried out, even if there are no other claims of involvement in the events at issue).

### Disposition

**IT IS HEREBY ORDERED** that, for the reasons stated, **C/O HARRIS**, **C/O WINGARTER**, **C/O NEWCOMBE** and **C/O MCCLURE** are **DISMISSED without prejudice**.

**IT IS FURTHER ORDERED** that **COUNT 1** is **DISMISSED with prejudice**.

**IT IS FURTHER ORDERED** that **COUNTS 2-8** shall otherwise **PROCEED** against Defendants **MAJOR ZEIGLER**, **LT. HORTON**, **C/O LINDENBERG**, **AMY LANG**, **REVA ENGELADE**, **REBECCA STEFANI**, **DR. NWABASI**, **LT. KROKE**, **C/O FLEMMING**, **C/O SULSER**, **C/O GOETZ**, **C/O PHELPS**, and **LT. HOLT**.

**IT IS FURTHER ORDERED** that **WARDEN KIM BUTLER**, in her official capacity, shall be added as a defendant for purposes of the motion and prayer for injunctive relief.

     **IT IS FURTHER ORDERED** that, pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 72.1(c), Plaintiff Merritt's motion for TRO (contained within the complaint) is hereby **REFERRED** to United States Magistrate Judge Stephen C. Williams, who shall resolve the request for injunctive relief as soon as practicable, and issue a report and recommendation.  The period for filing any objections to the report and recommendation shall not exceed **14 days** from the date of the report.  If the magistrate judge concludes that more immediate action is necessary, he shall contact the undersigned district judge and/or adjust the response period accordingly.  Any motions filed after the date of this Order that relate to the request for injunctive relief or seek leave to amend the complaint are also hereby **REFERRED** to Judge Stephen C. Williams.

     **IT IS HEREBY ORDERED** that, because the TRO issue is pressing and for the convenience of the Court, the Clerk of Court shall prepare all necessary documents for personal service upon **WARDEN KIM BUTLER** at Menard Correctional Center, and the United States Marshal for this judicial district shall effect personal service of summons and the complaint upon Butler as soon as practicable. Service shall be at government expense.

     The Clerk of Court shall prepare for Defendants **MAJOR ZEIGLER**, **LT. HORTON**, **C/O LINDENBERG**, **AMY LANG**, **REVA ENGELADE**, **REBECCA STEFANI**, **DR. NWABASI**, **LT. KROKE**, **C/O FLEMMING**, **C/O SULSER**, **C/O GOETZ**, **C/O PHELPS**, and **LT. HOLT**:  (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons), and (2) Form 6 (Waiver of Service of Summons).  The Clerk is **DIRECTED** to mail these forms, a copy of the complaint, and this Memorandum and Order to each Defendant's place of employment as identified by Plaintiff, and in the case of Warden Butler, to Menard Correctional Center.  If a Defendant fails to sign and return the Waiver of Service of Summons (Form 6) to the Clerk within 30 days from the date the forms were sent, the Clerk shall take appropriate steps

to effect formal service on that Defendant, and the Court will require that Defendant to pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

With respect to a Defendant who no longer can be found at the work address provided by Plaintiff, the employer shall furnish the Clerk with the Defendant's current work address, or, if not known, the Defendant's last-known address.  This information shall be used only for sending the forms as directed above or for formally effecting service.  Any documentation of the address shall be retained only by the Clerk.  Address information shall not be maintained in the court file or disclosed by the Clerk.

Plaintiff shall serve upon Defendants (or upon defense counsel once an appearance is entered), a copy of every pleading or other document submitted for consideration by the Court. Plaintiff shall include with the original paper to be filed a certificate stating the date on which a true and correct copy of the document was served on Defendants or counsel.  Any paper received by a district judge or magistrate judge that has not been filed with the Clerk or that fails to include a certificate of service will be disregarded by the Court.

Defendants are **ORDERED** to timely file an appropriate responsive pleading to the complaint and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g).

Pursuant to Local Rule 72.1(a)(2), this action is **REFERRED** to a United States Magistrate Judge for further pre-trial proceedings.

Further, this entire matter shall be **REFERRED** to a United States Magistrate for disposition, pursuant to Local Rule 72.2(b)(2) and 28 U.S.C. § 636(c), *if all parties consent to such a referral.*

If judgment is rendered against Plaintiff, and the judgment includes the payment of costs under Section 1915, Plaintiff will be required to pay the full amount of the costs, notwithstanding

that his application to proceed *in forma pauperis* may have been granted.  *See* 28 U.S.C. § 1915(f)(2)(A).

Plaintiff is **ADVISED** that at the time any application is made under 28 U.S.C. § 1915 for leave to commence this civil action without being required to prepay fees and costs or give security for the same, the applicant and his or her attorney are deemed to have entered into a stipulation that the recovery, if any, secured in the action shall be paid to the Clerk of the Court, who shall pay therefrom all unpaid costs taxed against plaintiff and remit the balance to Plaintiff. Local Rule 3.1(c)(1).

Finally, Plaintiff is **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and each opposing party informed of any change in his address; the Court will not independently investigate his whereabouts.  This shall be done in writing and not later than **7 days** after a transfer or other change in address occurs.  Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution.  *See* FED. R. CIV. P. 41(b).

**IT IS SO ORDERED.**

**DATED:  May 2, 2014**

s/ *Michael J. Reagan*
**MICHAEL J. REAGAN**
**UNITED STATES DISTRICT JUDGE**